**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| TIARE TECHNOLOGY, INC., | |
| Plaintiff, | No. 2:21-CV-301-JRG-RSP |
| | **JURY TRIAL DEMANDED** |
| v. | |
| BED BATH & BEYOND INC., | |
| Defendant. | |

**DEFENDANT BED BATH & BEYOND INC.'S
<u>RESPONSIVE CLAIM CONSTRUCTION BRIEF</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.          INTRODUCTION ................................................................................. 1

II.        ARGUMENT ....................................................................................... 3

     A.    "Venue Specific Application (Program)" ............................................... 3

          1.    Tiare Has Not Overcome the Presumption for Plain and Ordinary Meaning ................................................................................................. 4

          2.    The '729 Patent Specification Supports a Plain and Ordinary Meaning ..... 6

          3.    The '224 Patent Proves the Disputed Terms Do Not Include a Plurality of Venues ................................................................................................... 8

     B.    Indefiniteness ................................................................................... 13

          1.    The Preambles of the '414 Patent Are Limiting ....................................... 14

          2.    The Limiting Construction of the Preambles Renders Certain Claims of the '414 Patent Indefinite .......................................................................... 16

          3.    Even if the Preamble Is Not Limiting, the Identified Claim Terms of the '414 Patent Still Fail for Indefiniteness .................................................. 19

III.       CONCLUSION ................................................................................. 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Accentra, Inc. v. Staples, Inc.*,
    500 F. App'x 922 (Fed. Cir. 2013) ......................................................................... 19

*Allen Eng'g Corp. v. Bartell Indus., Inc.*,
    299 F.3d 1336 (Fed. Cir. 2002) ............................................................................ 18

*Bell Communc'ns Research v. Vitalink Communc'ns Corp.*,
    55 F.3d 615 (Fed. Cir. 1995) ................................................................................ 15

*Bradium Techs. LLC v. Iancu*,
    923 F.3d 1032 (Fed. Cir. 2019) .............................................................................. 6

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
    813 F. App'x 522 (Fed. Cir. 2020) ....................................................................... 19

*C.f. SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*,
    983 F.3d 1367 (Fed. Cir. 2021) ............................................................................ 19

*Catalina Mktg. Int'l v. Coolsavings.com, Inc.*,
    289 F.3d 801 (Fed. Cir. 2002) ............................................................................. 15

*Cave Consulting Grp., LLC v. OptumInsight, Inc.*,
    725 F. App'x 988 (Fed. Cir. 2018) .................................................................... 9, 10

*Charles E. Hill & Assocs. v. Abt Elecs., Inc.*,
    No. 2:09-CV-313-JRG, 2012 U.S. Dist. LEXIS 3026 (E.D. Tex. Jan. 10,
    2012) ..................................................................................................................... 12

*Enzo Biochem Inc. v. Applera Corp.*,
    780 F.3d 1149 (Fed. Cir. 2017) ............................................................................ 10

*Forest Labs., LLC v. Sigmapharm Labs., LLC*,
    918 F.3d 928 (Fed. Cir. 2019) ............................................................................... 8

*Fundamental Innovation Sys. Int'l LLC v. Samsung Elecs. Co.*,
    No. 2:17-cv-145-JRG-RSP, 2018 U.S. Dist. LEXIS 15541 (E.D. Tex. Jan. 31,
    2018) ..................................................................................................................... 15

*Homeland Housewares, LLC v. Whirlpool Corp.*,
    865 F.3d 1372 (Fed. Cir. 2017) ............................................................................. 4

*Horizon Pharma, Inc. v. Reddy's Labs. Inc.*,
   839 Fed. App'x 500 (Fed. Cir. 2021) ........................................................................ 5

*HZNP Meds. LLC v. Actavis Labs. UT, Inc.*,
   940 F.3d 680 (Fed. Cir. 2019) ................................................................................ 18

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*,
   381 F.3d 1111 (Fed. Cir. 2004) ................................................................................. 4

*Intamin, Ltd. v. Magnetar Techs., Corp.*,
   483 F.3d 1328 (Fed. Cir. 2007) ............................................................................... 11

*Invensys Sys., Inc. v. Emerson Elec. Co.*,
   No. 6:12-cv-799, 2014 U.S. Dist. LEXIS 108401 (E.D. Tex. Aug. 6, 2014) ......................... 18

*Kara Tech. Inc. v. Stamps.com Inc.*,
   582 F.3d 1341 (Fed. Cir. 2009) ............................................................................... 17

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
   358 F.3d 898 (Fed. Cir. 2004) ................................................................................ 11

*Light Transformation Tech. LLC v. Lighting Sci. Grp. Corp.*,
   No. 2:12-cv-826, 2014 U.S. Dist. LEXIS 94090 (E.D. Tex. July 11, 2014) ......................... 20

*Markman v. Westview Instr.*,
   517 U.S. 370 (1996) .............................................................................................. 13

*MBO Labs., Inc. v. Becton, Dickinson & Co.*,
   602 F.3d 1306 (Fed. Cir. 2010) ............................................................................... 10

*Multiform Desiccants, Inc. v. Medzam, Ltd.*,
   133 F.3d 1473 (Fed. Cir. 1998) ................................................................................. 6

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) .................................................................................. 13, 14, 16

*Novo Indus. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003) ............................................................................... 18

*Nystrom v. TREX Co., Inc.*,
   424 F.3d 1136 (Fed. Cir. 2005) ................................................................................. 6

*Pass & Seymour, Inc. v. ITC*,
   617 F.3d 1319 (Fed. Cir. 2010) ................................................................................. 7

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) ..................................................................... 4, 11, 17

*Poly-Am., L.P. v. API Indus., Inc.*,
   839 F.3d 1131 (Fed. Cir. 2016) ................................................................................ 10

*Renishaw PLC v. Marposs Societa'per Azion*,
   158 F.3d 1243 (Fed. Cir. 1998) .................................................................................. 8

*Retractable Techs., Inc. v. Becton*,
   653 F.3d 1296 (Fed. Cir. 2011) ................................................................................ 17

*Synchronoss Techs., Inc. v. Dropbox, Inc.*,
   987 F.3d 1358 (Fed. Cir. 2021) ...........................................................................17-18

*Tele-Cons, Inc. v. GE*,
   No. 6:10-cv-45-LED-JDL, 2012 U.S. Dist. LEXIS 106658 (E.D. Tex. July 31,
   2021) ..................................................................................................................... 7, 8

*Trebro Mfg. v. FireFly Equip., LLC*,
   748 F.3d 1159 (Fed. Cir. 2014) ................................................................................ 11

*Trusted Knight Corp. v. IBM*,
   681 F. App'x 898 (Fed. Cir. 2017) ........................................................................... 16

*Trustees of Columbia Univ. in Cty. of N.Y. v. Symantec Corp.*,
   811 F.3d 1359 (Fed. Cir. 2016) ................................................................................ 18

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
   503 F.3d 1295 (Fed. Cir. 2007) .................................................................................. 6

*Wi-LAN USA, Inc. v. Apple Inc.*,
   830 F.3d 1374 (Fed. Cir. 2016) .................................................................................. 7

**Statutes**

35 U.S.C. § 112 ............................................................................................................. 1, 13, 16

Pursuant to Local Patent Rule 4-5(b), Defendant Bed Bath & Beyond, Inc. ("BBB") hereby submits its claim construction brief in response to Plaintiff Tiare Technology, Inc.'s ("Tiare") opening claim construction brief regarding U.S. Patent Numbers 8,682,729 ("the '729 Patent") and 10,157,414 ("the '414 Patent") (collectively "the Asserted Patents") (Dkt. No. 54).

## I.     **INTRODUCTION**

Tiare's proposed constructions for the disputed terms overlook fundamental principles of claim construction under Federal Circuit law and validity under 35 U.S.C. § 112. The parties have two main disputes regarding construction: (1) the meaning of "venue specific application program" in the '729 Patent, and "venue-specific application" in the '414 Patent (collectively "venue specific application (program)"); and (2) whether several terms of the '414 Patent are indefinite. The table below summaries the parties' disputes. BBB respectfully requests that the Court enter its construction for each of the disputed terms listed below:

| Term | Plaintiff's Construction | Defendant's Construction |
|---|---|---|
| '729 Patent, claims 1, 19, 20: "venue specific application program" | an application associated with one or more venues, such as a chain of restaurants or retailer stores | plain and ordinary meaning |
| '414 Patent, claims 1, 2, 8, 10, 15, 17, 19: "venue-specific application" | an application associated with one or more venues, such as a chain of restaurants or retailer stores | plain and ordinary meaning |
| '414 Patent, claim 1: "providing, to the server system, data indicating the [updated] location" | not indefinite | indefinite |
| '414 Patent, claim 3: "receiving, from the server system" | not indefinite | indefinite |
| '414 Patent, claim 8: "receiving, from the mobile computing device" | not indefinite | indefinite |

| | | |
|---|---|---|
| '414 Patent, claim 9: "upon receiving an indication that an order is ready, providing the update location of the mobile computing device" | not indefinite | indefinite |
| '414 Patent, claim 10: "identifying a computing system" | not indefinite | indefinite |
| '414 Patent, claim 10: "providing the order information" | not indefinite | indefinite |

First, for the reasons discussed more fully below, the plain and ordinary meaning of "venue specific application (program)" is appropriate. The intrinsic evidence demonstrates that such a meaning is limited to a single geographically continuous location, and not multiple locations. Tiare impermissibly attempts to expand the scope of what the inventor intended to claim in her invention by construing "venue specific" as "one or more venues," an effort that is unsupported by the intrinsic evidence. Second, the above-listed terms of the '414 Patent fail for indefiniteness because a person of skill in the art would not know the scope of the subject matter claimed.

The Asserted Patents relate to generalized methods for placing a service request on a mobile device through an application associated with a particular venue, updating the service request status, and determining the location of the mobile device. *See, e.g.*, '729 Patent, claim 1. The named inventor of the Asserted Patents originally filed for patent protection nearly 20 years ago, seeking protection for her idea to make it easier for guests to order food and drinks while moving around a resort. '729 Patent, at 1:6-14, 1:41-64. The claims asserted against BBB in the present action cover the same original, basic idea. The focus, both of the parent application and of the Asserted Patents, is on increasing convenience for patrons visiting a single proprietorship, such as a resort or cruise, to purchase services and items while moving about the premises. *See, e.g.*, *id.* at 2:64-3:14, 3:55-64.

Second, despite Tiare's contention that its patents provided a novel solution to a long-standing problem, Tiare's Asserted Patents encountered several hurdles during prosecution in overcoming extensive related prior art. To survive, the applicant significantly amended the claims, adding limitations to overcome the examiner's rejections. Consequently, the issued claims of the '414 Patent contain a list of method steps, only some of which sufficiently indicate how they are to be performed, when read in light of the limiting preambles of the respective independent claims. These vagaries create ambiguities as to the scope of the subject matter of the claims, and as such those claims are indefinite.

## II.   ARGUMENT

### A.   "Venue Specific Application (Program)"

Tiare contends that the Court should construe "venue specific application program" ('729 patent, claims 1, 19, and 20) and "venue-specific application" ('414 Patent, claims 1, 2, 8, 10, 15, 17, and 19) as "an application associated with one or more venues, such as a chain of restaurants or retailer stores." Dkt. No. 54 at 4. In essence, Tiare asks the Court to construe the terms beyond their plain and ordinary meaning to include a "plurality of venues." *Id*. at 1, 4. This construction is contrary to the intrinsic evidence of the patents, which cannot support Tiare's proposal. Tiare cites to no evidence from either the '729 or the '414 Patents that indicates the inventor intended the singular "venue" to refer to a "plurality of venues." Instead, Tiare relies primarily on the disclosures of a related patent, U.S. Patent No. 11,195,224 ("'224 Patent"), which actually teaches away from Tiare's proposed construction. Tiare also misconstrues the disclosures of the '729 Patent specification to support its construction.

Tiare's construction of "venue specific application (program)" is flawed for at least three reasons: (1) Tiare has not provided sufficient evidence to overcome the presumption that terms

3

receive their plain and ordinary meaning; (2) the specification supports the plain and ordinary meaning that "venue specific" refers to a single geographical location; and (3) the '224 Patent cited by Tiare, proves that the applicant *distinguished* between claim limitations containing "venue" versus "plurality of venues" and failed to include claims for a plurality of venues in the Asserted Patents.

### 1.    Tiare Has Not Overcome the Presumption for Plain and Ordinary Meaning

The disputed term needs no construction, and the presumption for plain and ordinary meaning should apply. The Federal Circuit strongly prefers to accord terms their plain and ordinary meaning because "the patentee is required to 'define precisely what his invention is'" and "it is 'unjust to the public, as well as an evasion of the law, to construe it in a manner different from the plain import of its terms.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *White v. Dunbar*, 119 U.S. 47, 52 (1886)); *see also Innova/Pure Water, Inc. v. Safari Water Filtration Sys.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004) ("a claim construction analysis must begin and remain centered on the claim language itself"). The ordinary and customary meaning of a term should align with how a person of ordinary skill in the art, at the time of the invention, would have understood it. *Phillips*, 415 F.3d at 1313. Here, the plain and ordinary meaning of "venue-specific application" or "venue specific application program" provides sufficient meaning without more from this Court. "Venue specific" carries a readily apparent ordinary meaning, and as such, "claim construction will involve little more than the application of the widely accepted meaning of commonly understood words." *See Homeland Housewares, LLC v. Whirlpool Corp.*, 865 F.3d 1372, 1375-76 (Fed. Cir. 2017) (concluding the "plain language definition" of "pre-determined" means "determine beforehand"). The widely accepted meaning of "specific" when used in conjunction with a noun of singular form connotes a particular place, thing, or idea. In the context

of the claims, "specific" follows "venue," a noun in its singular form. Together, "venue specific" carries its commonly understood meaning of a single, geographically continuous location, not a plurality of locations. *See Horizon Pharma, Inc. v. Reddy's Labs. Inc.*, 839 Fed. App'x 500, 504 (Fed. Cir. 2021) (applying the plain meaning of "target" which means "set as a goal" because the disputed term "is a commonly understood word").

Tiare argues that the context surrounding "venue specific application (program)" supports its construction that "venue" may include "one or more venues." Tiare points to claim 8 which discloses that "venue-specific application" allows for ordering from "a venue." Dkt. No. 54 at 7. Tiare contends "a venue" conveys that a user may order from one or more venues. *Id.* at 7-8. Tiare correctly states that the Federal Circuit applies a general rule that "a" or "an" can mean "one or more." *Id.* at 5. However, Tiare incorrectly applies this rule to the disputed terms. In light of the claim language, the article "a" usually proceeds "venue specific application (program)." *See* '414 Patent, claims 1, 8, 15. Tiare's overlooks that when this article appears with the disputed term, "a"—and the possible plural meaning it carries—corresponds to the *application* or *program*, not to the number of *venues* associated with the application/program. *See, e.g.*, '414 Patent, claim 1 ("a venue-specific application"). In the context of the asserted claims, "venue specific" is used as an adjective, not a noun that could be subject to the proceeding article. Given the presumption for ordinary meaning, Tiare has not met its burden to apply its tortured construction. Tiare therefore cannot broaden its claim scope after issuance of the patents to include a plurality of venues when the public would not have had notice at the time of the invention that such an implementation would constitute infringement.

2. **The '729 Patent Specification Supports a Plain and Ordinary Meaning**

The specifications of the Asserted Patents[1] make clear that "venue specific application (program)" refers to the plain and ordinary meaning of the term, which would encompass only one geographically continuous location, not multiple separate locations. To determine the plain and ordinary meaning, the patent's specification provides necessary guidance because it reflects "[t]he inventor's words that are used to describe the invention." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1477 (Fed. Cir. 1998). For a disputed term, the specification "is the single best guide" to interpreting the term and "usually, it is dispositive." *Bradium Techs. LLC v. Iancu*, 923 F.3d 1032, 1043 (Fed. Cir. 2019) (quoting *Phillips*, 415 F.3d at 1313) (internal quotes omitted). For instance, the specification may clearly disclaim a feature that could otherwise be encompassed by a facially broad claim term. *Id.* (citing *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1347 (Fed. Cir. 2004)); *see also Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007) (quoting *Honeywell Int'l, Inc. v. ITT Indus*. 452 F.3d 1312, 1318-19 (Fed. Cir. 2006) ("[w]hen a patent ... describes the features of the 'present invention' as a whole, this description limits the scope of the invention."). Likewise, the consistent usage of a term justifies a particular interpretation. *See Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1144-45 (Fed. Cir. 2005) (construing "board" to mean "wood cut from a log," noting that in the intrinsic record the patentee "consistently used the term 'board' to refer to wood cut from a log," and stating that the patentee "is not entitled to a claim construction divorced from the context of the written description and prosecution history").

---

[1] The '729 and '414 Patents share a common specification. For convenience and consistency with Tiare's Opening Claim Construction Brief, references made herein to the specification refer to the '729 Patent. *See* Dkt. No. 54 at 2.

Here, the specification reinforces that plain and ordinary meaning, and not a tortured construction, is appropriate. *See Pass & Seymour, Inc. v. ITC*, 617 F.3d 1319, 1324 (Fed. Cir. 2010); *see also Tele-Cons, Inc. v. GE*, No. 6:10-cv-45-LED-JDL, 2012 U.S. Dist. LEXIS 106658, at **40-41 (E.D. Tex. July 31, 2021) (finding the specification's discussion of the dispute term "dimmer control" confirmed the it is used in its "plain and ordinary fashion" and reflected the commonly understood definitions).

Tiare argues the specification teaches that "venue" can include "multiple related locations" because the specification discloses "constituent parts of a particular resort . . . ." Dkt. 54 at 8; '729 Patent, at 3:56-64. The support relied on by Tiare in fact proves the opposite—the inventors only intended to envelop a single geographically continuous venue, *i.e.* "a particular resort," with its claimed invention. The specification explains that a single venue location may have multiple service locations within it, such as "restaurants, bars, pools, tennis courts," etc., all located within one proprietorship. '729 Patent, at 3:56-64. Nowhere in the specification does the inventor contemplate a set of separate locations which are not within geographic proximity or geographically contiguous.

Tiare's proposed construction which applies this term to "a chain of restaurants or retailer stores," has no foundation in the Asserted Patents' specification. Rather, the specification provides an extensive list of potential embodiments of the invention, none of which include a chain of restaurants or otherwise indicate applicability to multiple separately located venues. '729 Patent at 3:55-4:6; *Wi-LAN USA, Inc. v. Apple Inc.*, 830 F.3d 1374, 1382 (Fed. Cir. 2016) (holding "the specification's consistent references to multiple 'specified connections' [weighed] in favor of a construction excluding embodiments where the intermediary node is capable of maintaining only one 'specified connection'").

The '729 Patent specification's description of the problem which it seeks to resolve corroborates that the actual invention only encompasses a single venue location. *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("Ultimately, the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim."). For example, in framing the problem in the prior art, the patentee describes inconveniences faced by patrons of "luxury and upscale resorts" because patrons often must traverse across the resort, leaving unattended their personal belongings or interrupting enjoyment of another part of the facility, to order other amenities offered by the resort, such as food and beverages. '729 Patent, at 1:25-30; 1:58-64. The named problem has no relevance outside the context of a single premises.

Similarly, the patent also describes its functional benefits as allowing patrons, who are already located on the resort, to more conveniently schedule or purchase additional activities or products offered by the same proprietor. *Id.* at 15:65-16:12. The purpose driving the invention and its alleged benefits proves the patentee intended "venue specific application (program)" to connote the plain and ordinary meaning of an application for a single venue, rather than one for a plurality of locations. *See Forest Labs., LLC v. Sigmapharm Labs., LLC*, 918 F.3d 928, 933 (Fed. Cir. 2019) (holding the specification's explanation of the benefits of "sublingual and buccal treatment over the prior art" support the district court's interpretation that the claims were limited to sublingual or buccal formulations despite boarder claim terms).

### 3.    The '224 Patent Proves the Disputed Terms Do Not Include a Plurality of Venues

Tiare relies upon the allowed claims of a subsequently-filed and granted child patent, the '224 Patent, to bolster its proposed construction, but its arguments are unavailing. *See* Dkt. No. 54 at 4-8. The '224 Patent cited by Tiare instead demonstrates that in the context of the Asserted

Patents, "venue" is to be understood as a single location. Tiare asserts that because a continuation application of the Asserted Patents, the '224 Patent, expressly discloses that its "'venue-specific application' may be 'associated with a plurality of venues,'" the Asserted Patents should be construed consistently with this disclosure. Dkt. No. 54 at 4.

However, the Federal Circuit has previously rejected a similar scenario. In *Cave Consulting*, the Federal Circuit held that the district court erred in its presumption of "a broad and non-limiting reading" of the independent claim, in order to preserve the validity of the dependent claim. *Cave Consulting Grp., LLC v. OptumInsight, Inc.*, 725 F. App'x 988, 994 (Fed. Cir. 2018) (Non-Precedential). At the time of filing the specification, in that case, "the original claims did not purport to claim direct standardization as part of the invention, and that only after five years following the filing date, did the patentee add dependent claims reciting 'direct standardization.'" *Id.* at 993. The Federal Circuit found the "specification's consistently limiting description" and the fact that the relied-upon dependent claims "were added after the filing of the original application [a]s significant." *Id.* at 995. "[T]hese interpretive canons, despite the later-added dependent claims, [could not] overcome the claim scope that is unambiguously prescribed by the specification." *Id.* at 995.

Here, the '729 Patent specification was originally filed on July 6, 2012, and the '414 Patent specification was originally filed on November 21, 2017. *See* attached Exhibit A at TIARE_TX-00001171 (Electronic Acknowledgement Receipt of the '729 Patent application filing); attached Exhibit B at TIARE_TX-00001813 (Electronic Acknowledgement Receipt of the '414 Patent application filing). By comparison, the '224 Patent specification, although originally filed on December 12, 2018, added the dependent claims at issue after the notice of allowance on September 1, 2021 and *after* the filing of this Complaint on August 5, 2021. *See* attached Exhibit

C at TIARE_TX-00000077 (Amendment after notice of allowance for the '224 Patent). Notably, "plurality of venues" only first appears in the later-added dependent claims, yet nowhere in the specification or in any claims of the Asserted Patents or their family, prior to September 1, 2021. *Id.* This is exactly the type of post-hoc characterization of "one embodiment" in later-added dependent claims, many years after the original specification of the parent was filed, that was rejected by the Federal Circuit in *Cave Consulting*.  And, this is the exact same impermissible broadening of an independent claim, without support from the specification, in an attempt in this instance to create a claim for infringement where there is none with respect to the earlier-issued patents. Construing the early-issued patents, or the independent claims of the '224 Patent, to encompass a plurality of venues would be impermissible broadening for the purpose of saving the unsupported dependent claim of the '224 Patent.

"Claim differentiation does not serve to broaden claims beyond their meaning in light of the patent as a whole, and it cannot override clear statements of claim scope found in the specification and prosecution history." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016); *see also Enzo Biochem Inc. v. Applera Corp.,* 780 F.3d 1149, 1156–57 (Fed. Cir. 2017) ("As claim 1 is limited to indirect detection by its own plain meaning, it would be inappropriate to use the doctrine of claim differentiation to broaden claim 1 to include a limitation imported from a dependent claim, such as direct detection."). If the dependent claims are impermissibly broader than the independent claim, the proper remedy is to invalidate the dependent claims, not to broaden independent claims where the plain and ordinary meaning provide no support for such. *MBO Labs., Inc. v. Becton, Dickinson & Co.,* 602 F.3d 1306, 1319 (Fed. Cir. 2010).

While Tiare is correct that a court should interpret terms consistently across various claims, *Phillips*, 415 F.3d at 1314 (citing *Rexnord Corp. v. Laitram Corp.*, 274 F.3d 1336, 1342 (Fed. Cir. 2001)) ("[b]ecause claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims"), Tiare misconstrues Federal Circuit law by overlooking the requirement of claim differentiation. Derived from the requirement to construe terms consistently, the principle of claim differentiation recognizes that the presence of a term in one claim or element, while absent in another, signifies a *difference* in meaning. *Id.* (noting that reference to "'steel baffles' [] strongly implies that the term 'baffles' does not inherently mean objects made of steel"). In particular, the Federal Circuit explained that "the presence of a dependent claim that adds a particular limitation gives rise to a presumption that the limitation in question is not present in the independent claim." *Trebro Mfg. v. FireFly Equip., LLC*, 748 F.3d 1159, 1167 (Fed. Cir. 2014) (quoting *Phillips*, 415 F.3d at 1314-15) (concluding the district court erred by importing the limitation from a dependent claim to the independent claim which did not include the disputed term because it "renders the term redundant and offends principles of claim differentiation"); *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (holding that the "juxtaposition of independent claims lacking any reference to a pressure jacket with dependent claims that add a pressure jacket limitation provide[d] strong support for Liebel's argument that the independent claims were not intended to require the presence of a pressure jacket."); *Intamin, Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1335 (Fed. Cir. 2007) (holding that the dependent claim "modified" the term at issue such that the "dependent claim show[ed] both that the claim drafter perceived a distinction between magnetic and non-magnetic intermediaries and that independent claim 1 impliedly embraced non-magnetic intermediaries").

The doctrine of claim differentiation also extends to related patents that contain the disputed terms. *See Charles E. Hill & Assocs. v. Abt Elecs., Inc.*, No. 2:09-CV-313-JRG, 2012 U.S. Dist. LEXIS 3026, at *45 (E.D. Tex. Jan. 10, 2012) (applying the doctrine of claim differentiation to claim terms across multiple patents with a common specification). In *Charles E. Hill*, this Court held that the terms "remote computer" and "customer's remote computer" carried different meanings as "neither 'consistency' nor… the intrinsic record provide an appropriate basis to import a limitation [from one patent to another]," "there is a presumption that different words have different meanings," and "some claims in related patents-in-suit used the term 'remote computer' and some claims used the term 'customer's remote computer.'" *Id.* at 43-45 (internal citations omitted). The same is true here. There is no basis to import the "plurality of venues" language from the '224 Patent into the Asserted Patents, there is a presumption that "plurality" means something different than "venue-specific," and the Asserted Patents do not use the word "plurality" in the context of the venues associated with the claimed application.

The presence of "plurality of venues" in the dependent, but not independent claims, of the '224 Patent solidifies that "venue specific application (program)" alone does not mean an application for a "plurality of venues." In the '224 Patent, the term "plurality of venues" only appears in its dependent claims. Dkt. No. 54-1, Ex. C at TIARE_TX-00000077. For example, independent claim 21 recites "providing a venue-specific application." *Id.* at TIARE_TX-00000072. Its dependent claim 41 recites "[t]he system of claim 21, wherein the venue-specific application is associated with a plurality of venues." *Id.* at TIARE_TX-00000077. Dependent claims 43 and 45 expressly include the limitations "plurality of retail locations" and "plurality of restaurants," respectively. *Id.* To ensure that the dependent claims of the '224 Patent are not rendered redundant and meaningless, the Court must infer that the term "venue" of "venue-specific

application" in independent claim 21 inherently does *not* refer to a "plurality" of venues. This redundancy applies across both the '224 Patent and the Asserted Patents.

As Tiare notes in its opening brief, the interpretation of the '224 Patent "is intrinsic evidence to the '729 and '414 Patents." Dkt. 54 at 4, n. 1 (citing *Dietgoal Innovations LLC v. Kellan Rest. Mgmt. Corp.*, No. 2:12-CV-0761-JRG-RSP, 2014 U.S. Dist. LEXIS 19047, at 46 (E.D. Tex. Feb. 13, 2014) ("'[H]ow a term is utilized in formally related patents is also relevant intrinsic evidence to a claim construction analysis.') (collecting authority)."). Consequently, the '729 and '414 Patent terms which refer to "venue specific application (program)" must likewise maintain the singular construction of "venue" in order to preserve consistency among the inventor's use of the same terms.

Even viewing the terms of the '729 and '414 Patent without the context of the '224 Patent, claim differentiation still requires that "venue specific application (program)" refer to a singular venue. "Plurality" only appears in only one claim of either the '414 or '729 Patent and refers to a "plurality of mobile computing devices." '414 Patent, claim 15. The presence of "plurality" to inform the reader of multiple mobile computing devices, without its use with respect to venues, confirms that "venue" refers to a single location.

### B.   Indefiniteness

Under 35 U.S.C. § 112(b), patent claims must "inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The definiteness validity requirement ensures the public has sufficient notice of what is claimed versus "what is still open to them." *Markman v. Westview Instr.*, 517 U.S. 370, 373 (1996) (citing *McClain v. Ortmayer*, 141 U.S. 419, 424 (1891)). While 35 U.S.C. § 112 does

13

not require "absolute precision," the standard for definiteness "mandates clarity." *Nautilus*, 572 U.S. at 899.

The previously identified limitations of the '414 Patent, set out in the table above, lack the necessary clarity to apprise the public as to what is claimed by the '414 Patent. The preambles of claims 1 and 8 limit the scope of the limitations in the body of the claims to method steps performed by the "one or more processors," and define the device in which the one or more processors is located. The limitations in the body of the '414 Patent are method claims, the majority of which explicitly identify the specific function of the "the one or more processors." However, none of the identified limitations of the '414 Patent identify exactly what the claimed one or more processors which perform the method steps, are doing with respect to those steps. Principles of claim differentiation and the limitations imposed by the preambles, therefore, conflict with the express disclosures in the claim body, rendering these limitations indefinite. Even if the preambles are not limiting, the limitations of the claims of the '414 Patent are still invalid for indefiniteness because they fail to identify any device that performs the identified steps. One of skill in the art would not have sufficient notice of what is and is not infringing.

### 1.     The Preambles of the '414 Patent Are Limiting

Tiare does not dispute that the preambles of claims 1 and 8 are limiting for the purposes of whether the identified terms of the '414 Patent are indefinite. Dkt. No. 54 at 11, n. 5. For clarification, the limiting nature of the preambles is nevertheless discussed herein, so as to support BBB's subsequent indefiniteness arguments. The preambles of claims 1 and 8 of the '414 Patent limit the scope of the subsequent limitations by confining the method steps to being "executed by one or more processors." The preambles are limiting because: (1) they afford the required antecedent basis for terms in the claim body, and (2) they provide a necessary component to form a structurally complete invention.

14

First, the '414 Patent preambles contain the necessary antecedent, "one or more processors," referred to by subsequent claim elements. *See Bell Communc'ns Research v. Vitalink Communc'ns Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995). The preambles delineate in what device the processors are located as "of a first mobile computing device" (claim 1). Most subsequent method steps explicitly refer to the preamble's definition of "the one or more processors" to identify which device preforms these steps. *See, e.g.* claim 1 ("communicating by *the* one or more processors") (emphasis added). Reliance on the preambles for the antecedent basis of the "one or more processors" in the body of the '414 Patent claims, therefore, requires a limiting construction of the preambles. *See Fundamental Innovation Sys. Int'l LLC v. Samsung Elecs. Co.*, No. 2:17-cv-145-JRG-RSP, 2018 U.S. Dist. LEXIS 15541, at *60 (E.D. Tex. Jan. 31, 2018) (finding the entirety of the preambles limiting where subsequent limitations in the claims disclosed "the mobile device," referring to the description in the preamble: "the mobile device configurable for use in a wireless telecommunications network").

Second, the preambles provide a necessary element to form a structurally complete invention, because the '414 Patent drafter intended to define the claimed subject matter in both the preamble and in the subsequent limitations. *See Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002); *see also Bell Commc'ns Research*, 55 F.3d at 620 ("[T]he claim drafter cho[se] to use *both* the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects.") (emphasis in original). The drafter of the '414 Patent divided the written description of the invention into sections addressing three distinct devices on which the methods may be performed: (1) Patron Service System ('414 Patent at 3:58-7:52); (2) Exemplary Portable Patron Unit (*id.* at 7:53-12:28); and (3) Exemplary Central Unit (*id.* at 12:29-20:48). The '414 Patent's two asserted independent

claims (1 and 8) mirror these three sections of the specification. *See, e.g.*, '414 Patent, claim 1 (claiming a "computer-implemented method executed by one or more processors *of a first mobile computing device*," *i.e.* the Exemplary Portable Patron Unit). By focusing the invention's written description on the devices that perform the claimed processes, the specification evidences that the structurally complete invention includes each preamble's particular description of the one or more processors. The preambles must limit the claimed method steps.

### 2.     The Limiting Construction of the Preambles Renders Certain Claims of the '414 Patent Indefinite

There is an irreconcilable conflict between the devices identified as performing the method steps of claims 1, 3, and 8-10, and the vagueness of the tasks identified as certain of those steps, rendering them indefinite. *See Nautilus*, 572 U.S. at 910 (holding § 112 requires patent claims to "inform those skilled in the art about the scope of the invention with reasonable certainty"). In the identified method claims of the '414 Patent, each limitation contains a verb. The majority of, but not all, elements in the body of the '414 Patent claims provide that the verb is performed in some way "by the one or more processors." *See, e.g.*, '414 Patent, claim 1 ("receiving, over a wireless communications channel and *by the one or more processors. . .*"; "determining, *by the one or more processors*"; "receiving, *by the one or more processors*") (emphasis added). However, certain limitations make no reference to the processors which must, per the limiting preambles, perform the method steps. *E.g.*, '414 Patent, claim 1 ("providing, to the server system, data indicating the location of the first mobile computing device . . ."). One of skill in the art could not, and does not know, from reading the claims in light of the specification, how, if at all, the claimed one or more processors of the preamble performs the verbs of the identified limitations. *Trusted Knight Corp. v. IBM*, 681 F. App'x 898, 902-03 (Fed. Cir. 2017) (affirming finding of indefiniteness of the term

"in response to the software key logging" because the claim language conflicted with the meaning ascribed in the specification, rendering unclear what the limitation required).

The fact that the drafter specified the relationship between the one or more processors which must perform the method, and certain limitations, but not others, creates inconsistency, which signifies differences in meaning among them. Courts construe terms consistently across patent claims and limitations. *Phillips*, 415 F.3d at 1314 (citing *Rexnord Corp.*, 274 F.3d at 1342) ("[b]ecause claim terms are normally used consistently throughout the patent, the usage of a term in one claim can often illuminate the meaning of the same term in other claims."). When an artful claim drafter includes a certain term in some elements but excludes the same term from other elements, the absence of that term signals the element is not bound by that limitation. *Retractable Techs., Inc. v. Becton*, 653 F.3d 1296, 1313 (Fed. Cir. 2011) (holding that "the inventor's consistent use of the modifier 'one piece' . . . both in the claims and in the written description when he intended to describe a syringe with a one-piece body strongly implies that 'body,' standing alone, does not inherently contain a one-piece structural limitation"); *Kara Tech. Inc. v. Stamps.com Inc.*, 582 F.3d 1341, 1347 (Fed. Cir. 2009) (holding that the absence of claim terms "encryption key or "key data," which are present in other claims, "indicates that the claims at issue on appeal do not require the use of a key in the preprinted paper").

The drafter of the '414 Patent intentionally excluded the term "one or more processors" from certain claim elements, assumedly to indicate that those steps are not performed by the one or more processors of the preamble. The negative implication created by the absence of this term contradicts the limiting nature of the preamble, which requires each method step to be performed by the one or more processors. These method steps, however, cannot both be performed and *not* performed by the one or more processors, rendering these terms nonsensical. *See Synchronoss*

*Techs., Inc. v. Dropbox, Inc.*, 987 F.3d 1358, 1366–67 (Fed. Cir. 2021) (holding indefinite claims requiring "generating a [single] digital media file" that itself "compris[es] a directory of digital media files" (alterations in original)); *Trustees of Columbia Univ. in Cty. of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1367 (Fed. Cir. 2016) (claims describing "the step of extracting machine code instructions from something that does not have machine code instructions" were indefinite); *Invensys Sys., Inc. v. Emerson Elec. Co.*, No. 6:12-cv-799, 2014 U.S. Dist. LEXIS 108401, at **5-10 (E.D. Tex. Aug. 6, 2014) (claim requiring performance of a mathematically impossible calculation was indefinite).

Without a sensible construction of these claim terms, one of skill in the art would not have sufficient notice as to the boundaries of the claimed invention, rending the terms not "reasonably clear." *HZNP Meds. LLC v. Actavis Labs. UT, Inc.*, 940 F.3d 680, 690-91 (Fed. Cir. 2019) (concluding disputed term "Impurity A" indefinite because, in the context of the claim language, specification, and proffered extrinsic evidence, the meaning is not "reasonably clear"). While the court will typically construe terms to preserve validity, it is not the province of the court to "rewrite claims to preserve their validity." *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002). In order to reconcile the conflict created by the limiting construction of the preamble (which Tiare does not dispute) and the deliberate absence of "one or more processors," in the identified limitations, the Court would have to re-write the claims, either deleting the "one or more processors" from the preamble or other claim elements, or adding the term to the identified indefinite method steps. Neither option is within the discretion of a district court when construing terms. *See Novo Indus. v. Micro Molds Corp.*, 350 F.3d 1348,1357-58 (Fed. Cir. 2003) (rejecting plaintiff's request to delete or add certain terms to the claims to resolve their insoluble ambiguity).

### 3.   Even if the Preamble Is Not Limiting, the Identified Claim Terms of the '414 Patent Still Fail for Indefiniteness

Even if the preamble is not limiting, the identified limitations of the '414 Patent still fail for indefiniteness. The patentee must define the boundaries of the claimed subject matter with sufficient delineation as to clarify its scope. *Accentra, Inc. v. Staples, Inc.*, 500 F. App'x 922, 929 (Fed. Cir. 2013). When the scope or meaning of a claim term is "entirely unclear," a person of skill in the art "could not with reasonable certainty, discern the meaning of the claim term." *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526-27 (Fed. Cir. 2020) (affirming finding of indefiniteness where "said different IP address" lacked an antecedent basis and the context of the claims and specification created further "mismatch" among the plurality of IP addresses claimed in the invention.).

For the identified limitations of the '414 Patent, a person of skill in the art would not know the boundaries of the claimed subject matter because it is entirely unclear what device performs the steps. For example, claim 1 recites "providing, to the server system, data indicating the location of the first mobile computing device." This claim element gives no delineation as to what apparatus, device, or structure the inventor claims can provide the location information to the server system. The lack of an identified device creates a boundaryless scope to the limitation. In method claims directed at communications technology, the patent must recite a necessary structure to perform the method steps. *C.f. SIMO Holdings, Inc. v. H.K. uCloudlink Network Tech., Ltd.*, 983 F.3d 1367, 1375 (Fed. Cir. 2021) (quoting *Catalina*, 289 F.3d at 808-09 ("In supplying the only structure for the claimed apparatus, the preamble language supplies 'essential structure,' and the body does not define 'a structurally complete invention'—which are two key reasons for preamble language to be deemed limiting.").

In addition, directional verbs, such as those responsible for communicating information among various structures within a communication system, require an origin and a recipient. *See Light Transformation Tech. LLC v. Lighting Sci. Grp. Corp.*, No. 2:12-cv-826, 2014 U.S. Dist. LEXIS 94090, at *27 (E.D. Tex. July 11, 2014) (finding the term "axis of light direction" indefinite where the patent failed to identify the specific axis or direction that constitutes "the axis of light direction"). The limitations of the '414 Patent challenged for indefiniteness each contain a directional verb but lack an origin or a recipient. For example, claim 3 recites "receiving, from the server system. . . ." Claim 3 identifies the origin, *i.e.* the server system, but not the recipient. Thus, a person of skill in the art would merely have to guess as to where the receiving takes place. This element of claim 3 of the '414 Patent, like the others in BBB's list of indefinite terms, do not give reasonable certainty as to the meaning of the claimed terms and thus, must fail for indefiniteness.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, BBB respectfully requests that the Court reject Plaintiff's request to construe "venue specific application (program)" beyond its plain and ordinary meaning and find the identified terms of the '414 Patent as indefinite.

Dated: February 10, 2022                          Respectfully submitted,

<div style="margin-left:40%">

*/s/ Emily Welch*
Emily Welch
(Georgia Bar No. 606071)
Robert L. Lee
(Georgia Bar No. 443,978)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 West Peachtree St. NE
Atlanta, Georgia 30309-3424
Telephone: (404) 881-7159
Facsimile: (404) 881-7777
Email: Emily.Welch@alston.com

</div>

Email: Bob.Lee@alston.com

***Attorneys for Defendant***
***Bed Bath & Beyond, Inc.***

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on February 10, 2022, I caused the forgoing to be electronically filed

with the Clerk of the Court using CM/ECF, which will send notification of such filing to all

registered participants.

*/s/ Emily Welch*
Emily Welch